Jack MORGAN et al *v.* Thomas E. SPARKS et al

74-327                                523 S.W. 2d 926

Opinion delivered June 9, 1975
[Rehearing denied June 30, 1975.]

*Herschel H. Friday, James A. Buttry,* and *Thomas P. Leggett,* for appellants.

*Jack Lessenberry* and *Howell, Price, Howell & Barron,* for appellees.

CONLEY BYRD, Justice. Thomas E. Sparks brought this action against Jack Morgan, et al, as members of the Arkansas Public Building Authority and some nominal constitutional and administrative officers attacking the bond issuing provisions of Act 236 of 1973 and to declare certain acts of the Public Building Authority, (hereinafter referred to as "PBA") as being invalid and unlawful. Kelly Bryant, Secretary of State, was permitted·to intervene on the theory that there was a conflict between the authority given him by several appropriations acts and the "Arkansas State Capitol Complex Master Plan" adopted by the "PBA". The trial court held that the authorization by Act 236, *supra,* to issue revenue bonds violated Amendment 20 to the Constitution of Arkansas. Since the trial court reasoned that the Arkansas State Capitol Complex Master Plan depended entirely upon the sale of bonds, he enjoined the "PBA" from any further expenditure on the Master Plan. The trial court also enjoined the Secretary of State from any further construction in the area until the General Assembly should resolve the conflicts between him and the "PBA". The "PBA" has appealed contending only that the authorization for the issuance of the bonds does not violate Amendment 20 to the Arkansas Constitution. Sparks and the Secretary of State have cross-appealed raising the issues hereinafter discussed.

The record shows that there are a number of State Agencies in Pulaski County paying out a considerable amount of rental money each year for office space to private property owners and that to alleviate this rental problem, the "PBA"

was created by Act 236 of 1973. After creating the "PBA", Act 236 [Ark. Stat. Ann. § 5-1002.1 (Supp. 1973)] transfers to the "PBA" certain lands acquired in the name of the State of Arkansas by the Arkansas Revenue Department Building Commission pursuant to the provisions of Act 151 of 1965. Section 4 of Act 236 provides:

> "The Authority is hereby authorized and empowered to (a) . . .
> (b) Use the land acquired by the Arkanaas Revenue Department Building Commission, which are transferred to the Arkansas Public Building Authority under the provisions of subsection (b) of Section 3 of this Act as sites for public buildings, and obtain additional sites. . . . "

With reference to the "Bids for Construction", Section 13 of Act 236 provides:

> "The Authority is hereby authorized to employ architects to prepare plans, specifications and estimates of cost for the construction of public buildings hereunder and to supervise and inspect such construction. After the Authority shall have approved the plans and specifications prepared by the architect, it shall proceed to advertise for bids and contract for the construction of the public buildings in accordance with applicable laws governing the construction of public buildings. . . . "

The General Assembly also appropriated $15,000,000.00 for the use of the "PBA".

The record shows that after the "PBA" had employed the necessary architects, it jettisoned a proposed construction of a highrise building on the land acquired from the Arkansas Revenue Department Building Commission and instead developed the plan for its "Arkansas State Capitol Complex Master Plan" which would use the Capitol Mall area and require a total expenditure of approximately $74,000,000.00. The "PBA" also decided that considerable time and money could be saved by letting construction contracts on a "fast

tracking method". Under this "fast tracking method", the "PBA" was letting contracts for certain phases of the construction before the final plans for other stages of the building was complete.

Following the entry of the trial court's decree, the General Assembly passed Act 270 of 1975, effective as of February 28, 1975, repealing PBA's authority to issue bonds without legislative approval. Because of our settled policy of not ruling upon constitutional issues without an actual controversy, we find that Act 270 of 1975 has mooted the issues on this appeal with reference to the authority of the "PBA" to issue revenue bonds. Consequently, we do not reach the merits of the direct appeal by the "PBA".

On his cross-appeal, Sparks first contends that the transfer of property from the Arkansas Revenue Department Building Commission to the "PBA" is contrary to Art. 16, § 11 of the Constitution of Arkansas, which provides that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." We find no merit in this contention because the Act under which the land was acquired by the Arkansas Revenue Department Building Commission specifically recognized that the lands were to be acquired for public purposes. See Section 6 of Act 38 of the First Extraordinary Session of 1961.

We agree with Sparks that under Section 4 (b) of the Act, *supra*, the "PBA" was only authorized to use the land transferred from the Arkansas Revenue Department Building Commission. The Authority to "obtain additional sites" does not authorize the "PBA" to use those sites to construct buildings thereon.[1]

Sparks also contends that the "PBA" has violated Section 13 of the Act, *supra*, by proceeding with construction before the architects' plans and specifications are complete. We agree with his contention that the literal meaning of Section 13 prohibits the advertising and accepting of bids until the "PBA" has approved the plans and specifications for the

---

[1]There is some question in the record as to whether the Capitol Mall area was properly obtained by the "PBA".

construction of the building.

Since our construction of Section 4(b), *supra*, limits the "PBA" to using the lands transferred from the Arkansas Revenue Department Building Commission, it necessarily follows that the trial court was in error in enjoining the Secretary of State from proceeding with his authorized construction.

Reversed and remanded for entry of a decree not inconsistent herewith. Such decree shall note that the grounds upon which the trial court relied for entering the injunction have become moot by virtue of the authority withdrawn from the "PBA" by Act 270 of 1975. Of course nothing herein said is to be accepted as our approval or disapproval of the bond issuance authorized by Act 270 of 1975. All costs are assessed against the "PBA".